UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PETER HENDERSON                                                                    PLAINTIFF

VERSUS                                          CIVIL ACTION NO.1:20-CV-134-HSO-RPM

GEORGIA SHELBY                                                                  RESPONDENT

## REPORT AND RECOMMENDATION

This matter is before the Court for consideration of Peter Henderson's ("Henderson") Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 on April 3, 2020. Doc. [8]. Henderson, proceeding *pro se* and *in forma pauperis*, is an inmate at the Wilkinson County Correctional Facility. He is serving a life sentence after a jury in Harrison County convicted him of first-degree murder on December 6, 2017.

Henderson shot and killed Chandler Pugh ("Pugh") on August 10, 2016. At the time of the shooting, Henderson was dating Pugh's ex-girlfriend, Charlotte Guillotte ("Guillotte"). Henderson and Guillotte were in a car parked at a gas station when Pugh unexpectedly arrived and confronted them. Guillotte witnessed the shooting and testified at trial. At trial, Henderson argued self-defense.

### I. GROUNDS RAISED

In Ground One, Henderson argues his trial counsel was ineffective for failing to request jury instructions related to defensive theories. Doc. [8], at 5. In Ground Two, Henderson contends the jury verdict was against the overwhelming weight of the evidence. *Id*. at 7. In Ground Three, Henderson asserts his appellate counsel was ineffective for failing to challenge the trial court's evidentiary rulings related to Pugh's toxicology report and certain text messages. *Id*. at 8. In Ground Four, Henderson alleges prosecutorial conduct. *Id*. at 10. Respondent, Georgia Shelby,

1

filed her response on August 28, 2020. Doc. [13]. The undersigned finds that Henderson raised Ground One and Ground Two on direct appeal; and thus, the grounds were reviewed on the merits. The undersigned concludes that Ground Three was unexhausted; and Ground Four is procedurally barred because it was not properly raised at trial or on direct appeal.

## II. LAW AND ANALYSIS

### a. Claims reviewed on the merits

Ground One and Ground Two raised in the instant petition were adjudicated on the merits by the Mississippi Court of Appeals. Accordingly, the Court must consider those claims in light of 28 U.S.C. § 2254 (d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Subsection (d)(2) applies to a state court's factual determinations, and subsection (d)(1) governs review of questions of law and mixed questions of law and fact. *See Morris v. Cain*, 186 F.3d 581, 584 (5th Cir. 2000).

As to questions of law, a federal court must defer to the state court's decision on the merits of such claim unless that decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court. A state court decision is contrary to federal law when the state court reaches a conclusion opposite to that of the United States Supreme Court on a question of law or if the state court decides a case differently than the United States Supreme Court has on a set of materially indistinguishable facts. *Murphy v. Dretke*, 416 F.3d 427,

432 (5th Cir. 2005). A state court decision involves an unreasonable application of federal law when the state court properly identifies the applicable federal principle but unreasonably applies the principle to the facts of the petitioner's case. *Id.*

As to questions of fact, federal habeas courts presume that state court factual findings are correct unless the findings are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See Knox v. Johnson*, 224 F.3d 470, 476 (5th Cir. 2000). Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A federal habeas court presumes that the state court's findings of fact are correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Murphy*, 416 F.3d at 432. As both the United States Supreme Court and the Fifth Circuit have recognized, a criminal defendant is not constitutionally entitled to a perfect trial, just a fair one. *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986); *Sawyer v. Butler*, 848 F.2d 582, 594 (5th Cir. 1988).

    i.   Ground One, Ineffective Assistance of Counsel

In Ground One, Henderson asserts his trial counsel was ineffective when counsel failed "to request jury instruction on his theory of defense." Doc. [8], at 5.[1] Federal courts examine ineffective assistance of counsel claims pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy *Strickland*, Henderson must demonstrate not only that his counsel was objectively deficient, but also that this deficient performance prejudiced the defense. *Id.* To show

---

[1] Also found in Ground One, Henderson raises an ineffective assistance of appellate counsel claim. Doc. [8], at 5. Henderson does not develop any argument concerning the claim. Instead, he discusses appellate counsel's alleged failure more fully in Ground Three. Therefore, the undersigned addresses the claim in its analysis of Ground Three found below.

3

that counsel's performance was deficient, Henderson "must identify the acts and omissions of counsel that are alleged not to have been the result of reasonable judgement." *Id.* at 690.

For the second prong, Henderson "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id*. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.* The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Martin v. McCotter*, 796 F.2d 813, 816–17 (5th Cir. 1986). In assessing prejudice, courts "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Furthermore, "a court need not address both prongs [of an ineffective assistance of counsel claim,] . . . but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

On direct appeal, the Mississippi Court of Appeals concluded Henderson's ineffective assistance of counsel claim lacked merit. Doc. [13-1], at 4; *Henderson v. State*, 281 So. 3d 1058, 1063 (Miss. Ct. App. 2019). The court explained that defense counsel's main argument at trial was self-defense. *Id*. The court concluded that "based on the questions asked by Henderson's trial attorneys and the closing argument they made to the jury, the defense's primary theory appeared to be that Henderson shot Pugh purely in self-defense." *Id*. Given that theory, the court reasoned "offering instructions on the other theories that Henderson now mentions may very well have detracted from this primary theory of self-defense. Thus, we find . . . Henderson fails to meet his high burden of establishing ineffective assistance of counsel." *Id*. The court determined Henderson failed to overcome the strong presumption that his trial counsels' choice not to pursue additional

4

defense instructions was reasonable trial strategy. As such, the court concluded Henderson failed to show deficient performance. The court further found Henderson failed to demonstrate there was a reasonable probability that such instructions would have changed the result of the trial. *Id*.

The state court reasonably concluded that Henderson's counsel made an informed choice to pursue self-defense as the central defense. In closing arguments at trial, counsel stated that Henderson was acting purely in self-defense because he felt his life was in imminent danger. Doc. [13-1], at 4. Given the trial strategy of self-defense, it was entirely reasonable for the state court to conclude that requests for competing instructions would have detracted from the central theory. Moreover, counsel's decision fell within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 680; *see also Wills v. Louisiana*, 2018 WL 11276044, at *1 (W.D. La. July 20, 2018) (finding that the decision by petitioner's trial counsel to not pursue defense theories was not a question of client autonomy and the court could not say it was an unreasonable application of *Strickland*).

As the Court of Appeals notes, defense counsel did not reference castle doctrine or stand-your-ground laws, likely to avoid further detraction from his self-defense argument. However, Henderson's trial counsel discussed the issue of defense-of-others throughout the trial. During opening statements, defense counsel stated that Henderson felt as though "his life was in danger, as though Ms. Guillotte's life was in danger, and he felt he had to act." Doc. [14-9], at 111. Counsel added Henderson "was protecting himself and Guillotte at the time." *Id*. at 112. When testifying on his own behalf, Henderson repeatedly stated that he was protecting himself and Guillotte. Doc. [14-10], at 78–86. In closing arguments, defense counsel stated that Henderson "had to do something to protect himself, let alone Ms. Guillotte." Doc. [13-1]. Despite hearing testimony and

5

argument related to defense-of-others, the jury still unanimously convicted Henderson of first-degree murder.

Further, Guillotte, an eyewitness, contradicted Henderson's version of events. She testified that she was not afraid of Pugh. Doc. [14-9], at 149. She also testified that Pugh never threatened her, and she never saw Pugh with a weapon. *Id*. It certainly is a reasonable trial strategy for defense counsel not to offer the defense-of-others instruction in light of such contradictory eyewitness testimony. Henderson cannot demonstrate prejudice because the jury heard Guillotte's testimony that she never felt Pugh was acting in a threatening manner; thus, undermining Henderson's defense-of-others theory.

Henderson merely provides one sentence in the instant petition stating counsel failed to request "instruction on his theory of defense." Doc. [8], at 4. Henderson has not shown his trial counsel was deficient. Henderson also fails to demonstrate how requesting other defense instructions would have been more advantageous than the self-defense instructions requested. The Mississippi Court of Appeals' discussion of Henderson's ineffective assistance of counsel claim did not involve an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. Nor, was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254 (d). Henderson offers no argument that there was an unreasonable application of clearly established law. Defense counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable." *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). A court reviewing those choices is required "not simply to give [counsel] the benefit of the doubt . . . but to affirmatively entertain the range

of possible reasons [he] may have had for proceeding as [he] did." *Feldman v. Thaler*, 695 F.3d 372, 380 (5th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011)).

Applying the appropriate deference and having independently reviewed Henderson's claims in conjunction with the state-court records, the state court's application of *Strickland* was not objectively unreasonable. *See Love v. Mississippi*, 2013 WL 6274644, at *4 (N.D. Miss. Dec. 4, 2013) (habeas relief not warranted when a petitioner alleged trial counsel was ineffective for failing to request a duress instruction); *Ervin v. Stephens*, 2013 WL 6146058, at *8 (S.D. Tex. Nov. 21, 2013) (finding habeas petitioner's allegations that his trial counsel was ineffective for failing to request a sudden passion jury instruction was insufficient to demonstrate deficient performance as petitioner made no argument as to why counsel's choice was not within a range of professional assistance).

### ii. Ground Two, Weight of the Evidence

In Ground Two, Henderson argues the "jury's verdict is against the overwhelming weight of evidence." Doc. [8], at 7. Henderson raised this same argument on direct appeal and in his motion for post-conviction relief. Doc. [14-2]; Doc. [13-3], at 3. Respondent argues that matters concerning the weight of the evidence are to be decided by the jury; and thus, such disputes make habeas relief improper. Doc. [13], at 26. *See Webster v. State*, 817 So.2d 515, 518 (Miss. 2002) ("It is well established that matters regarding the weight of the evidence are to be resolved by the jury").

"A weight-of-the-evidence claim is purely a matter of state law and is not cognizable on habeas review as it requires an assessment of the credibility of the evidence presented at trial." *Branch v. Mississippi*, 2013 WL 3776740, at 3 (S.D. Miss. July 18, 2013) (quoting *Tibbs v. Florida*, 457 U.S. 31, 37–38 (1982)); *see also Clayton v. Jenkins*, 2017 WL 4054155, at *5 (S.D. Miss. Aug. 29, 2017). Therefore, Henderson is not entitled to habeas relief on

7

his weight of the evidence claim. *See Ford v. Banks*, 2019 WL 2518151, at *9 (S.D. Miss. Apr. 11, 2019).

To the extent Henderson challenges the sufficiency of the evidence, the undersigned finds this claim fails because the evidence presented at Henderson's trial was more than sufficient to support his conviction. Insufficiency of the evidence can constitute a claim for habeas corpus relief only if the evidence, when viewed in the light most favorable to the State, is such that no reasonable fact finder "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001). This standard "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983).

The record presents ample evidence that would lead a reasonable fact finder to find the essential elements of the crime beyond a reasonable doubt. First and foremost, Henderson admitted that he shot Pugh. Doc. [14-10], at 3–4. The primary dispute at trial was whether Henderson acted in self-defense. Guillotte, an eyewitness, testified that she never saw Pugh with a weapon. *Id*. at 8. The police never found a weapon on Pugh's body. Guillotte testified that she never heard Pugh threaten Henderson or attempt to lunge at Henderson. Doc. [14-9], at 132–35. She told the jury that Henderson was more than a foot taller and 200 pounds heavier than Pugh. Doc. [14-10], at 8; 81. There was testimony at trial describing how Pugh stood up and walked away from the car when Henderson shot him. Doc. [9], at 135; Doc. [14-10], at 3. Consistent with the description of events, a pathologist testified that Pugh had a gunshot wound to his back. Doc. [14-10], at 35. The jury watched surveillance video of the shooting. *Id*. at 49–50. Doc. [14-10], at 76. The jury further heard about a text message sent by Henderson to Guillotte six days before the shooting where Henderson stated that he would kill Pugh. *Id*. at 46. The jury learned that an hour after Henderson

8

sent that text, he searched online for information concerning Mississippi stand-your-ground laws. Doc. [14-10], at 88. Based on the foregoing, there was sufficient evidence for a rational trier of fact to have returned a guilty verdict.

### b. Unexhausted Claims

Henderson failed to exhaust the claims found in Ground Three. In Ground Three, he argues that appellate counsel was ineffective by failing to raise claims related to the trial court's evidentiary rulings. Doc. [8], at 8. It appears that Henderson refers to the trial court's exclusion of testimony concerning Pugh's toxicology reports and various text messages.[2]

"Applicants seeking federal habeas relief under § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief." *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). To satisfy this requirement, a federal habeas petitioner must generally present his claims to the state's highest court in a procedurally proper manner and provide that court with a fair opportunity to pass upon the claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Here, Henderson did not present the ineffective assistance of appellate counsel claim found in Ground Three to the Mississippi Supreme Court, thereby forfeiting his opportunity to have the claim reviewed on the merits. As Henderson did not raise his claim in a procedurally proper manner, he no longer has an available state avenue through which to properly present the claim. Doc. [14-2]. Doc. [13-3]. As such, Henderson has defaulted the claim and it is procedurally barred from federal habeas review. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) ("If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claims procedurally barred, then there has been a procedural

---

[2] Although Henderson stated in his motion for post-conviction relief that counsel was "ineffective in trial and appeal process," he did not identify any specific deficiencies as it related to appellate counsel. Throughout his direct appeal and post-conviction relief proceedings, Henderson focused his attention exclusively on trial counsel's failings.

default for purposes of federal habeas corpus relief."); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) (holding that when "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review").

Thus, in order to obtain habeas review of his defaulted claim, Henderson must demonstrate cause for the default and actual prejudice as a result, or that a failure to consider the claim would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. Henderson has not demonstrated or even alleged what might be the cause for his failure to raise his claim during his post-conviction proceedings. Because he has failed to demonstrate cause, the undersigned need not question whether there is prejudice. *See Martin*, 98 F.3d at 849. Moreover, there has been no showing that failure to consider the claim would result in a fundamental miscarriage of justice. Accordingly, the undersigned finds the allegations contained in Ground Three are not cognizable for federal habeas review.

Even so, appellate counsel was not deficient in failing to raise the toxicology claim on direct appeal. Before trial, the State moved to prohibit any kind of testimony or questions related to Pugh's toxicology screen. Doc. [14-9], at 10. Defense counsel objected to the motion and argued Pugh's alcohol and drug use was relevant to his behavior before his death. *Id*. The trial court sustained the motion relying on Mississippi law. *Id*. at 11. The Court of Appeals of Mississippi has explained that "in order for character evidence of a victim's intoxication to be relevant and admissible, the 'defendant must offer evidence of an overt act of aggression perpetrated against him by the victim' and show that the alleged intoxication increased the 'victim's propensity for violence at the time of the crime.'" *Lewis v. State*, 198 So. 3d 431, 434 (Miss. Ct. App. 2016)

(quoting *Rouster v. State*, 981 So.2d 314, 320 (Miss. Ct. App. 2007)).[3] Henderson has not identified any overt act of aggression or specific testimony explaining how the drug use in question affected Pugh's propensity for violence. Therefore, the claim would be meritless if raised on appeal. *See Easterling v. State*, 306 So. 3d 808, 825 (Miss. Ct. App. 2020) (finding no error when the defendant failed to show how the victim toxicology report would have been relevant). "[I]neffective assistance of counsel cannot arise from the failure to raise a legally meritless claim," *United States v. Slape*, 44 F.4th 356, 360 (5th Cir. 2022), or conclusory allegations, *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)*; see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995) ("[T]o show prejudice in regard to a claim that the attorney failed to raise a certain defense, the petitioner must show that the defense likely would have been successful at trial").

Similarly, Henderson's unexhausted claim concerning text messages also fails. Before trial, defense counsel sought to introduce text messages between Guillotte and Henderson sent prior to the shooting. Doc. [14-9], at 14; 90–96. The messages revealed that Guillotte sought to end her romantic involvement and any contact with Henderson. *Id*. at 92. The trial court ruled the evidence would be admissible when Henderson testified as it related to Henderson's mindset at the time of the shooting. *Id*. at 92–96. A review of the trial transcript reveals the messages were not presented to the jury. Apparently, defense counsel chose not to introduce the text messages into evidence. Given that the trial court permitted Henderson to introduce the evidence at the appropriate time, Henderson cannot demonstrate deficiency by appellate counsel because there was no trial court error for appellate counsel to raise on appeal. *Id*. at 96.[4]

---

[3] To the extent Henderson raises an independent claim concerning error by the trial court, this claim lacks merit. Doc. [8], at 8. The trial court properly sustained the motion in accordance with relevant law. "When a federal court reviews state court evidentiary rulings on a petition for habeas corpus, it will grant relief only if the state court error is sufficiently egregious to render the entire trial fundamentally unfair." *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir. 1989).

Also related to text messages, defense counsel sought to introduce messages between Guillotte and Pugh. In those messages, Guillotte mentioned she was pursuing police charges against Pugh for domestic violence. The trial court ruled the evidence inadmissible unless the defendant knew about the text messages prior to the shooting. *Id*. at 97. Although the exact text messages were not presented, the jury heard extensive testimony from Guillotte about her violent history with Pugh and her actions pressing charges against him on the day of the shooting. *Id*. at 124–130. Henderson's unexhausted claim that appellate counsel did not raise the issue of excluded evidence, specifically text messages between Pugh and Guillotte, lacks merit. The jury heard testimony which essentially substituted the proposed evidence. Henderson has not shown any deficiency by counsel by appellate counsel and prejudice could not have resulted. The claim lacks merit. *Strickland*, 466 U.S. at 697.[5]

c. <u>**Procedurally Barred Claim**</u>

Respondent argues Ground Four is procedurally barred. In Ground Four, Henderson asserts that the State presented a still image from a "prejudicial gruesome video of deceased" during closing arguments. Doc. [8], at 10. In essence, he asserts a claim of prosecutorial misconduct. Prosecutorial misconduct warrants federal habeas corpus relief only if the conduct is so prejudicial that it renders the trial fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Darden v. Wainwright*, 477 U.S. 168 (1986). He raised this claim in his

---

[5] In Henderson's post-conviction relief motion, he also argued the trial court improperly denied him the opportunity to introduce "text messages of deceased to the Defendant." Doc. [13-3], at 3. Henderson testified that he received threatening text messages from Pugh. Doc. [14-10], at 83. Trial testimony indicated there were no text messages exchanged between Henderson and Pugh. Doc. [14-10], at 54. Therefore, the trial court did not make an evidentiary ruling on the admissibility of these additional text messages. So, appellate counsel could not have been ineffective in failing to challenge a trial court ruling that never happened.

motion for post-conviction relief in the state courts. Doc. [13-3]. However, the ground was not raised on direct appeal. Doc. [14-2].

The undersigned reviewed the closing arguments. There is no indication in the trial transcript that the prosecutor showed a video to the jury during closing arguments. Rather, the transcript indicates that the prosecutor told the jury they would be able to watch the video in the jury room. Doc. [14-10], at 128. Trial counsel did not object to the admission of any video evidence in closing argument. Although it does appear that video surveillance clips were presented to the jury at other points in the trial, there is simply no indication that the prosecutor showed a video during closing arguments or made any comments related to the video's alleged graphic nature. Doc. [14-9], at 138; Doc. [14-10], at 128. Before trial, defense counsel merely objected to the video's admissibility based on relevancy grounds. Defense counsel did not indicate that the video had a graphic nature. Doc. [14-9], at 99. Accordingly, Henderson cannot establish that the prosecutor's conduct was so prejudicial that it rendered his trial unfair.

Moreover, the Mississippi Supreme Court found the above claim to be procedurally barred pursuant to Miss. Code Ann. § 99-39-21(1), Mississippi's contemporaneous objection rule. Doc. [13-4]; Doc. [13-3], at 3. "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). The Fifth Circuit has held Section 99-39-21(1) to be an independent state procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). The adequacy of the bar applied to Henderson's claim depends on "whether Mississippi has strictly or regularly applied it." *Id.* (citation omitted). Henderson, however, bears "the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal"

and "must demonstrate that the state has failed to apply the procedural bar to claims identical or similar to those raised by the petitioner himself." *Id.* Henderson has not carried his burden of proof and shown an "inconsistent and irregular" application of the bar. *See Stokes*, 123 F.3d at 861. He makes no mention of the bar at all.

Henderson's claim is barred pursuant to an independent and adequate state procedural rule. Thus, the Court may review the merits of these claim only if Henderson can show cause and actual prejudice, or that a fundamental miscarriage of justice would result from the Court's failure to consider the claims. *See Coleman*, 501 U.S. at 750. Henderson has not identified any external action which prevented him from presenting his claim. *Id.* Nor has he demonstrated any actual prejudice as a result of the imposition of this bar. Moreover, Henderson has not presented any new, reliable evidence that would show that, "more likely than not [ ] no reasonable juror would have convicted him in light of the new evidence." *See Fairman*, 188 F.3d at 644. Accordingly, the undersigned concludes that Ground Four is procedurally barred from federal habeas review.

## RECOMMENDATION

The undersigned recommends that Plaintiff Peter Henderson's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus be DENIED and DISMISSED with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.

A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 8th day of August 2023.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE